# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

RODNEY WAYNE FRAZIER, )
)
    Plaintiff, )
)
v. ) Case No. 19-CV-00038-GKF-FHM
)
STATE OF OKLAHOMA *ex rel.* )
OFFICE OF THE CHIEF MEDICAL )
EXAMINER, )
)
    Defendant. )

## OPINION AND ORDER

This matter comes before the court on the Motion to Amend Complaint [Doc. 23] of plaintiff Rodney Wayne Frazier. For the reasons set forth below, the motion is denied.

## I.    Background and Procedural History

This is an employment dispute brought by plaintiff Rodney Wayne Frazier against his former employer, State of Oklahoma *ex rel.* the Office of the Chief Medical Examiner (the "OCME"). Frazier began working for the OCME as an in-house medicolegal death investigator in September 2015, and was discharged from his employment on July 11, 2017. Frazier alleges that his termination was in retaliation for a sexual harassment complaint made by him against a female co-worker. Additionally, Frazier asserts that, throughout his employment, the OCME failed to properly compensate him for hours worked in excess of forty hours in a week.

On January 25, 2019, Frazier brought this case pursuant to the court's federal question jurisdiction, 28 U.S.C. § 1331.[1] On April 29, 2019, the OCME filed a Partial Motion to Dismiss

---

[1] Frazier does not allege that the parties are diverse. *See* 28 U.S.C. § 1332.

Plaintiff's Complaint. [2] [Doc. 5]. In response, Frazier amended his complaint. [Doc. 8]. The Amended Complaint included two claims: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and (2) violation of the Oklahoma Protection of Labor Act ("OPLA"), 40 OKLA. STAT. §§ 165.1 *et seq.* The OCME filed a motion to dismiss only the OPLA claim [Doc. 11], which the court granted in an order dated August 5, 2019. [Doc. 22].

Frazier now seeks leave to file a Second Amended Complaint to address the pleading deficiencies identified by this court in its August 5 Order. [Doc. 23]. The OCME objects to Frazier's request. [Doc. 24]. The motion to amend is now ripe for the court's review.

## II.     Standard

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of course within twenty-one (21) days of service or, if the pleading is one to which a responsive pleading is required, within 21 days of service of the responsive pleading or motion. FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Although a court should freely grant leave to amend "when justice so requires," FED. R. CIV. P. 15(a)(2), "denial of a motion to amend may be appropriate where there has been shown 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Steadfast Ins. Co. v. Agric. Ins. Co.*, No. 05-CV-126-GKF-TLW, 2014 WL 1901175, at *4 (N.D. Okla. May 13, 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

[2] Although the Court Clerk issued the Summons on January 28, 2019, the docket reflects no activity until April 29, 2019.

"'[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.'" *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971)).

## III. Analysis

As previously stated, Frazier seeks leave to amend to include additional factual allegations with respect to a claim for unpaid overtime under the OPLA. In opposition, the OCME contends that Frazier's requested amendment is futile for three separate reasons: (1) supplemental jurisdiction does not exist over the OPLA wage claim; (2) Frazier failed to comply with the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 152.1; and (3) the allegations of the proposed Second Amended Complaint fail to state a valid OPLA claim. Because the court concludes that supplemental jurisdiction does not exist and the OCME's first contention is dispositive, the court does not consider the OCME's other arguments.

The federal supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that, in civil cases in which the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the *same case or controversy* under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added). "A claim is part of the same case or controversy if it 'derive[s] from a common nucleus of operative fact.'" *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010) (quoting *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 165 (1997)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (internal citation omitted) ("The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact.").

The operative facts with respect to the federal retaliation claim and the state law overtime claim are included in the proposed Second Amended Complaint. Frazier alleges that, on July 7, 2017, he was getting a cup of coffee when a female co-worker, Joy Norwood, approached him and asked "whether a hug would cheer him up." [Doc. 23-1, ¶ 11]. Despite Frazier repeatedly rejecting her advances, Norwood allegedly continued following him down the hall and grabbed him from behind [*Id.*]. Frazier reported Norwood's behavior to his immediate supervisor, Dale Gross, via email that same day. [*Id.* ¶ 12]. The OCME's Chief Administrative Officer, Amy Elliot, conducted an investigation into the incident and, on July 11, 2017, issued a written opinion that Frazier's allegation was meritless. [*Id.* ¶ 13]. That same day, the OCME discharged Frazier from his employment for "engaging in harassing behavior." [*Id.* ¶ 14].

Frazier also alleges that, as the agency charged by statute with the responsibility for investigating certain deaths in the State of Oklahoma, the OCME must be able to respond to calls of reported deaths on a 24/7 basis, 365 days out of the year. [*Id.* ¶ 16]. The OCME has addressed this reality by requiring its medicolegal investigators to work assigned rotating shifts, which included shifts in which Frazier was placed in an "on-call" status overnight and on the weekends. [*Id.* ¶ 17]. Frazier alleges that, at the time of his hire, OCME agency practice as explained to him by Gross was to only compensate in-house investigators for the time spent actively working a death call. [*Id.* ¶ 18]. To the extent time spent actively working resulted in the accrual of overtime, medicolegal investigators were instructed to record that time on their monthly time sheets, which would result in the accrual of compensatory time of 1.5 hours for every one hour spent in an overtime status. [*Id.*]. Frazier specifically alleges that "[m]edicolegal investigators were expressly prohibited from including on-call time on their spreadsheets unless such time was directly tied to an assigned death they were actively investigating." [*Id.*].

Frazier further alleges that the OCME Statement of Policy, Procedure, and Practice, Overtime Pay and Compensatory Time (OP-010901) comported with the training he received upon his hire. [*Id.* ¶ 19; *see also* Doc. 23-1, pp. 15-21]. Pursuant to the version of the policy in place at the time of Frazier's hire, "on-call" time was not considered "work time" unless the employee's freedom of movement was so restricted as to prevent the employee from using the time for personal purposes. [Doc. 23, ¶ 19]. Frazier alleges that the OCME's practices required him to remain awake and ready to accept calls, to be showered and dressed in appropriate uniform, and to be actively engaged in reading emails throughout his on-call shift. [*Id.* ¶ 24]. Further, Frazier alleges that it was "clearly communicated" to him that he would be subject to discipline up to and including termination if he failed to answer the phone while on call or if he did not deploy to a scene within fifteen minutes of receipt of the assignment. [*Id.*]. Further, the OCME assigned Frazier a state vehicle for use when responding to the scene of a death. [*Id.* ¶ 25]. Because both State and OCME policy prohibit the use of state vehicles for personal reasons, Frazier alleges his ability to leave his residence while on call was significantly hampered given the requirement that he deploy to an assigned scene within fifteen minutes of receipt of the assignment. [*Id.*]. Frazier alleges, as a result of the policy, he could only travel a maximum of fifteen minutes from his residence. [*Id.*]. Frazier further alleges that, as a result of the agency practices, requirements, and limitations, his time "was not effectively his own, as he was not free to engage in personal activities, and, instead, the waiting time was spent primarily for the benefit of the [OCME]." [*Id.* ¶ 26].

Based on the allegations of the proposed Second Amended Complaint, it is clear that Frazier's Title VII retaliation claim and the proposed OPLA claim do not derive from a common nucleus of operative fact, but, instead, arise from two distinct factual circumstances. The first

circumstance, that surrounding the federal retaliation claim, is limited to a four-day period in July of 2017. The relevant conduct is limited to Frazier's report of an alleged instance of sexual harassment by his co-worker and Frazier's ultimate termination from the OCME. The second factual circumstance, that from which the OPLA claim arises, spans the nearly two-year duration of Frazier's employment with the OCME and relates to facts surrounding the OCME's application of its personnel policy regarding overtime compensation. The claims share no temporal connection or overlapping course of conduct. *See Shearon v. Comfort Tech Mech. Co., Inc.*, No. 12-CV-96, 2014 WL 1330751, at *3 (E.D.N.Y. Mar. 31, 2014). Although Frazier's employment with relationship with the OCME is foundational to each claim, "the employer-employee relationship alone is insufficient to create a common nucleus of operative fact between a[] [federal] claim and a state law claim." *Jones v. Addictive Behavioral Change Health Grp., LLC,* 364 F. Supp. 3d 1257, 1263 (D. Kan. 2019); *see also* [Pl.'s Reply, Doc. 25, p. 2 (emphasis added) ("*While Defendant is correct that the existence of an employer/employee relationship, alone, will not suffice to confer supplemental jurisdiction on the Court*, it can certainly inform the analysis.")]; *Thomas v. EONY LLC,* No. 13-CV-8512-JPO, 2015 WL 1809085, at *5 (S.D.N.Y. Apr. 21, 2015) ("District courts in this circuit have held that the fact of an employment relationship 'does not establish a 'common nucleus of operative fact' where it is the sole fact' that connects federal and nonfederal claims.").

Frazier argues that two claims share a common nucleus of operative fact to support supplemental jurisdiction because "the OPLA claim will inform as to the measure of damages available to Plaintiff should he prevail on his retaliation claim." [Doc. 25, p. 2]; *see also id.* ("Should Plaintiff prevail on his OPLA claim, the damages available for the retaliation would include his wages as they would have accrued had Defendant complied with the OPLA."). An

award of damages first requires a finding of liability. In this case, the claims require entirely separate evidence (apart from the employment relationship) to establish liability. A Title VII retaliation claim requires plaintiff to show (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262-63 (10th Cir. 1998). On the other hand, to establish an OPLA wage claim, "an employee has the burden of establishing the following elements: 1) an employer-employee relationship; 2) wages are earned and due or provided in an established policy; 3) employment was terminated; and 4) the employer failed to pay the employee's wages at the next regular pay day after termination." *Coen v. SemGroup Energy Partners G.P.,* 310 P.3d 657, 662 (Okla. Civ. App. 2013) (internal footnotes omitted). Further, calculation of back pay in a Title VII suit is committed to the discretion of the district court, *see Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994), to determine based upon equitable factors of which the OCME's overtime compensation policy would serve as only one of many. Any loose connection between the damages claimed in the Title VII claim and the factual underpinnings of the state law claim is insufficient to satisfy the "same case or controversy" requirement for supplemental jurisdiction. *See Bowdish v. Fed. Express Corp.*, No. CIV-07-400-D, 2009 WL 1047835, at **2-3 (W.D. Okla. Apr. 17, 2009) (finding insufficient factual nexus between Title VII race and gender discrimination claim and counterclaim seeking judgment in the amount of alleged overpayment of vacation pay to justify supplemental jurisdiction).

Frazier's reply brief includes a lengthy discussion of the District of Kansas's decision in *Jones*, but *Jones* is not to the contrary. *See Jones*, 364 F. Supp. 3d 1257. There, the plaintiff asserted claims for violation of the Fair Labor Standards Act, among other statues, for her

employer's alleged failure to pay overtime compensation. *Id.* at 1261. Defendant sought to assert two counterclaims: (1) unjust enrichment related to mistaken overpayments of holiday pay and (2) breach of contract related to plaintiff's failure to repay loans for car repairs extended by defendant. *Id.* The district court concluded that supplemental jurisdiction existed as to the unjust enrichment counterclaim because both plaintiff's claims and the unjust enrichment counterclaim required proof directly related to wages earned and paid. *Id.* at 1264. However, the court concluded that it lacked supplemental jurisdiction as to the breach of contract claim, despite defendant's assertions that the loans were akin to an overpayment of wages and therefore must be figured into a damage calculation. *Id.* at 1263-64. The court reasoned that the plaintiff's alleged failure to pay the car loan rested on "an entirely different set of facts" than the claim for overtime wages under the FLSA. *Id.* at 1263. Thus, the court held the state-law counterclaim for breach of contract "d[id] not derive from the same nucleus of operative fact as" plaintiff's federal claim. *Id.* at 1264.

Finally, even if supplemental jurisdiction existed, the court would decline to exercise it. Pursuant to § 1367(c)

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). As recognized by the Supreme Court, "the statute confirms the discretionary nature of supplemental jurisdiction." *Int'l Coll. of Surgeons*, 522 U.S. at 173. Section 1367(c)

"reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). As discussed above, the factual question of whether the OCME discharged Frazier in retaliation for his report of an alleged incident of sexual harassment—the determinative issue for Frazier's federal claim—is "predominantly distinct in scope" from the fact questions presented with respect to the overtime wages paid and owed Frazier under the OPLA. *See Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1311 (10th Cir. 1998) (district court did not abuse its discretion in declining supplemental jurisdiction over state-law wrongful termination and outrageous conduct claims that did not share a "common nucleus of operative fact" with plaintiff's federal claims), *overruled on other grounds by Styskal v. Weld Cty. Bd. of Cty. Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004). Further, application of the Oklahoma Governmental Tort Claims Act to the OPLA claim requires a "'surefooted' analysis of state law in an area of particular importance to a state." *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 803 (10th Cir. 1991). Finally, the court's assumption of supplemental jurisdiction over the OPLA claim would not further the values of judicial economy or convenience. As previously stated, the two claims require different evidence and therefore trial of the state and federal claims together would only complicate the proceedings. *See Jones*, 364 F. Supp. 3d at 1264. Discovery in this matter has not closed and therefore the parties are not so far into pretrial proceedings that declining supplemental jurisdiction would be unduly prejudicial.[3] Thus, for this additional reason, the court denies Frazier's motion to amend.

---

[3] The Tenth Circuit has adopted the "good cause" requirement of FED. R. CIV. P. 16, and requires "that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so." *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n,* 771 F.3d 1230, 1241

**IV.	Conclusion**

WHEREFORE, Plaintiff Rodney Wayne Frazier's Motion to Amend Complaint [Doc. 23] is denied.

DATED this 3rd day of October, 2019.

*[Signature]*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

(10th Cir. 2014). The deadline to amend pleadings was July 15, 2019. *See* [Doc. 12]. However, because the court concludes that plaintiff has not satisfied the less stringent requirements of FED. R. CIV. P. 15(a)(2), the court need not consider whether plaintiff demonstrated "good cause" for amendment under FED. R. CIV. P. 16.